**STATE OF NORTH CAROLINA**      **IN THE GENERAL COURT OF JUSTICE**
                                                     **SUPERIOR COURT DIVISION**

**ORANGE COUNTY**

| | |
|---|---|
| LAURA SAAVEDRA FORERO | |
| *Plaintiff,* | |
| v. | **COMPLAINT** |
| F.W. HUMPHREY, *in his individual and official capacities,* | |
| *Defendant.* | |

<u>**NATURE OF THE ACTION**</u>

1.      This action challenges the validity of a search warrant for a university student's cell phone in connection with Defendant's alleged investigation into a misdemeanor graffiti incident. Plaintiff contends that the affidavit in support of the search warrant contained materially false statements; that the alleged investigation into misdemeanor graffiti vandalism is pretext; and that in fact, Plaintiff was targeted as a result of her participation in lawful and constitutionally-protected First Amendment speech acts, including organizing a peaceful walk-out and free speech event on September 19, 2024, at the University of North Carolina, Chapel Hill (hereinafter "UNC-CH").

2.      On September 26, 2024, UNC CH Police Department Investigator F.W. Humphrey submitted a probable cause affidavit seeking a search warrant in Orange County Superior Court for Ms. Laura Saavedra Forero's cellular phone, access to several social media platforms, any correspondence, including email, and Ms. Saavedra Forero's entire internet browser history file. The property to be seized in both the affidavit and search

1

Electronically Filed Date: 10/28/2024 11:40 AM  Orange Superior Court County Clerk of Superior Court
Case 1:24-cv-00930-UA-LPA     Document 1-3     Filed 11/06/24     Page 1 of 33

warrant contain no temporal restrictions.

3.       Ms. Laura Saavedra Forero is a wheelchair user, and therefore, she is easily identified in a crowd. On September 19, 2024, Ms. Saavedra Forero participated in a lawful and constitutionally-protected free speech event on UNC CH's campus. At some point on that same day, there was an unrelated misdemeanor graffiti incident at the NAVAL ROTC building located on UNC CH's campus.

4.       There are no allegations in the probable cause affidavit that Ms. Saavedra Forero participated in the graffiti incident, and indeed, she was not involved. Instead, the probable cause affidavit seeks large swaths of Ms. Saavedra Forero's personal and private information without any temporal restrictions because law enforcement allegedly obtained cellphone video "by community submissions to law enforcement information requests," that show Ms. Saavedra Forero "with her phone out and holding it in such a way to record or document the events surrounding what was occurring at the Naval ROTC Armory which included graffiti vandalism to the NAVAL ROTC Armory." This purely conclusory and false statement in Investigator Humphrey's affidavit is the sole statement in the affidavit connecting Ms. Saavedra Forero to the graffiti incident.

5.       Investigator Humphrey provides no facts to support the conclusory and false statement that Ms. Saavedra Forero utilized her phone "to record the events surrounding what was occurring at the Naval ROTC Armory which included graffiti vandalism to the NAVAL ROTC Armory." The affidavit contains no factual information about the community submission video, namely no factual information about who filmed the video, when it was filmed, nor where it was filmed. The affidavit is devoid of any facts to

2

substantiate the conclusory and false statement that Ms. Saavedra Forero actually recorded the misdemeanor graffiti incident on her cell phone.

6.     Investigator Humphrey admits twice in his affidavit that UNC Police are already in possession of ample community submission video footage related to the September 19, 2024, demonstration and the graffiti incident, thus making the necessity for any alleged video on Plaintiff's phone moot.

7.     The probable cause affidavit included zero allegations that there is any evidence about the graffiti incident on any of Ms. Saavedra Forero's social media platforms, zero allegations that there is any evidence about the graffiti incident in any of Ms. Saavedra Forero's correspondence or that Ms. Saavedra Forero knows or has a connection to any individuals involved in the graffiti incident, and zero allegations that there is any evidence about the graffiti incident in Ms. Saavedra Forero's internet browser history. Yet, the search warrant permits UNC Police to search all of this broad and extremely intrusive information and contains zero temporal restrictions for this information, which includes constitutionally-protected speech and attorney-client privileged material.

8.     In light of glaring lack of probable cause and overbreadth of the search warrant and the ongoing and imminent irreparable harm to Plaintiff's right to privacy and right to be free from unreasonable searches, Plaintiff respectfully request preliminary and permanent injunctive relief to ensure immediate cessation of use or review of any information retrieved from the property seized and listed in the search warrant.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under N.C.G.S. § 7A-245.

10. Venue is proper under N.C.G.S. § 1-77(2) and N.C.G.S. § 1-82.

## PARTIES

**Plaintiffs**

11. Plaintiff Laura Saavedra Forero is a student at the University of North Carolina at Chapel Hill, NC (hereinafter "UNC-CH") and resides in the dormitory at UNC-CH. Ms. Saavedra Forero's cellular phone is the subject of the search warrant at issue in this case. Ms. Saavedra Forero has a direct and immediate privacy interest in the property seized.

**Defendant**

12. F.W. Humphrey is an investigator employed with UNC CH Police Department. Investigator Humphrey was the affiant that sought issuance of the search warrant and alleged the existence of probable cause. Investigator Humphrey did so under color of law and in his capacity as an employee of UNC CH Police Department.

## FACTUAL ALLEGATIONS

13. On September 19, 2024, several university students and community activists held a free speech event on UNC CH's campus. The purpose of the event was to call for an end to U.S. Military aid to Israel due to Israel's ongoing humanitarian rights violations. This event was peaceful, lawful, and constitutionally protected.

14. Ms. Saavedra Forero was one of dozens, if not hundreds, of individuals that

attended the free speech event.

15.     During the event, Ms. Saavedra Forero, along with the other demonstrators, marched throughout UNC CH's campus, including to the NAVAL ROTC building.

16.     At some point after the free speech event concluded a misdemeanor graffiti incident occurred at the NAVAL ROTC building. The graffiti was spray painted on the doors of the NAVAL ROTC building and the sign indicating the building's name.

17.     Ms. Saavedra Forero had no involvement in the graffiti vandalism and UNC Police Department do not allege that she had any involvement in the graffiti incident.

18.     On September 26, 2024, Investigator Humphrey sought issuance of a search warrant and submitted a probable cause affidavit to Judge Allen Baddour in Orange County Superior Court. *See* **Humphrey Affidavit, Exhibit A.**

19.     The probable cause affidavit contained the following twelve paragraphs:

- Paragraph 1 - Your affiant was assigned to investigate multiple cases involving graffiti vandalism to building owned or controlled by the University of North Carolina at Chapel Hill (UNC Chapel Hill) on September 19, 2024 (2024-001810, 2024-001811, 2024-001813).

- Paragraph 2 - These building (sic) included the Naval ROTC Armory located at 221 South Columbia St Chapel Hill, NC 27599.

- Paragraph 3 - "The reported graffiti incidents occurred during a scheduled free speech event that was posted by UNC SJP on their Instagram account encouraging a walk-out to the campus community."

5

- Paragraph 4 - This walk-out occurred at approximately 12:40 pm on September 19, 2024. The demonstrators then were guided by known-to-law enforcement UNC SJP members and other community organizers to walk into several buildings around the campus of UNC Chapel Hill.

- Paragraph 5 - One of these known individuals that was observed by law enforcement was Laura Saavedra Forero.

- Paragraph 6 - Your affiant observed Laura Saavedra Forero on multiple university camera systems guiding and directing demonstrators to different buildings where reports of graffiti were taken later. She was also seen with the same apparent organizers approximately 45 minutes before the event was scheduled to begin.

- Paragraph 7 - Eventually, at approximately 1:30 PM on September 19, 2024, the demonstration made its way to the front doors of the Naval ROTC Armory on the west side of the building.

- Paragraph 8 - A few demonstrators then began to use spray paint cans to create graffiti on the sign, doors and columns of the building.

- Paragraph 9 - UNC Chapel Hill Police soon received a report of a fight in progress at the flagpole of the Naval ROTC building as demonstrators were removing the American Flag from the flag pole.

- Paragraph 10 - In cellphone video obtained by community submissions to law enforcement information requests, Laura Saavedra Forero is observed

6

and known by your affiant to be in one of these videos with her phone out and holding it in such a way to record or document the events surrounding what was occurring at the Naval ROTC Armory which included graffiti vandalism to the NAVAL ROTC Armory.

- Paragraph 11 - Due to Laura Saavedra Forero's apparent involvement, as mentioned above, in the orchestration of the event as well as using her cell phone to record while criminal activity was occurring or about to occur there would be reason to believe that photos, videos, messaging or communication related to the crime of Graffiti Vandalism would exist on her cell phone from the Naval ROTC Armory.

- Paragraph 12 - Listed below are 2 images of Laura Saavedra Forero using her phone to support previously stated facts at the Naval ROTC Armory.



Case 1:24-cv-00930-UA-LPA    Document 1-3    Filed 11/06/24    Page 7 of 33



20.     Paragraphs ten through twelve in Investigator Humphrey Probable Cause Affidavit are false statements made in bad faith.

21.     Paragraphs ten through twelve are also purely conclusory statements that are not supported by any factual information provided within the four corners of the affidavit.

22.     The search warrant is overly broad in that it seeks private and personal information and correspondence without providing any probable cause supporting the notion that this information contains evidence related to the vandalism incident.

23.     On September 27, 2024, three UNC Police Department officers served Ms. Saavedra Forero with the search warrant at her dormitory located on UNC CH's campus.

**CLAIM FOR RELIEF**

# COUNT ONE
## VIOLATION OF THE RIGHT TO BE FREE FROM UNREASONABLE SEARCHES IN VIOLATION OF THE FOURTH AMENDMENT
## 42 U.S.C. § 1983
### *On Behalf of Plaintiff Against All Defendant*

24.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

25.     Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of the right to be free from unreasonable searches under the Fourth Amendment.[1]

26.     When a Plaintiff "file[s] suit pursuant to a federal statute in state court, 'plaintiff's relief, if any, will be the same that she might have in a federal court under' section 1983." *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 608 (2000) (citing *Truesdale v. University of North Carolina,* 91 N.C. App. 186, 197, 371 S.E.2d 503, 510 (1988), *overruled on other grounds by Corum v. University of North Carolina,* 330 N.C. 761, 413 S.E.2d 276 (1992)).

27.     A §1983 claim requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997). Government officials sued in their individual capacities are "persons" within the meaning of the statute, although they may be entitled to qualified immunity. *Id*. at 26, 112 S.Ct. 358.

---

[1] References to the Fourth Amendment include the Fourth Amendment as applied to the States through the Fourteenth Amendment.

28.     The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

29.      It is axiomatic that probable cause serves as the basis for the issuance of search warrants, *see* U.S. Const. Amend IV.

30.     The Amendment was crafted to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Carpenter v. United States,* 585 U.S. 296, 138 S. Ct. 2206, 2213, 201 L.Ed.2d 507 (2018).

31.     It is the Framers' "response to the reviled 'general warrants' and 'writs of assistance' of the colonial area, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Riley v. California*, 573 U.S. 373, 403, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014).

32.     The Fourth Amendment secures the "'privacies of life' against 'arbitrary power.'" *Carpenter*, 138 S. Ct. at 2214 and the "central aim" of the Amendment is "to place obstacles in the way of a too permeating police surveillance." *Id.*; *United States v. Chavez*, 423 F. Supp. 3d 194, 202 (W.D.N.C. 2019).

33.     "As with sealed packages and private phone calls, it is objectively reasonable for an individual to expect privacy in non-public content that is entrusted to a social media website as the intermediary of the ultimate recipient." *Chavez*, 423 F. Supp. 3d at 203.

34.     "A narrower reading would fail to recognize how 'technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes.'" *Id.* (quoting Carpenter, 138 S. Ct. at 2214). "Through Facebook and other social

Case 1:24-cv-00930-UA-LPA     Document 1-3     Filed 11/06/24     Page 10 of 33

media sites, users instantaneously convey intimate, momentous, and sometimes weighty information to close friends and family members spanning the entire globe." *Chavez*, 423 F. Supp. 3d at 203; Cf. *United States v. Warshak*, 631 F.3d 266, 284 (6th Cir. 2010).

35.     Because an individual "has a legitimate expectation of privacy in his non-public [Social Media] content, the Fourth Amendment commands officers to obtain a *valid* warrant before searching that content." Chavez, 423 F. Supp. 3d at 205 (citing *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018)) (emphasis added).

36.     Seizure of a cell phone is a particularly acute and grave intrusion on personal privacy, and "differs from other physical objects both quantitatively and qualitatively, given their immense storage capacity." *Riley v. California*, 134 S.Ct. 2473, 2478 (2014).

37.     "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Grady v. North Carolina*, 575 U.S. 306, 310 (2015).

**A. Execution of the Search Warrant Violated Plaintiff's Fourth Amendment Rights Because It Was Based on False Statements Made in Bad Faith.**

38.     "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV.

39.     "When an officer improperly obtains a search warrant using deceptive falsities or omissions and uses that ill-gotten warrant to search and seize property, the Fourth Amendment's right to be free from unreasonable searches and seizures is violated." *Smith v. Travelpiece,* 31 F.4th 878, 884 (4th Cir. 2022) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990)).

40.     To violate the Fourth Amendment, "the false statements or omissions must be 'material,' that is, 'necessary to the finding of probable cause.'" *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014) (citing *Miller v. Prince George's Cnty., Md.,* 475 F.3d 621, 628 (4th Cir.2007) (alteration omitted) (quoting *Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978))).

41.     Materiality is determined by "excis[ing] the offending inaccuracies" and assessing whether the remaining statements, excluding the misstatements, "would establish probable cause." *Miller,* 475 F.3d at 628.

42.     Furthermore, the false statements must have been made "deliberately or with a reckless disregard for the truth," which may be proved by showing that "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* at 627.

43.     Once shown that the affidavit's remaining contents are insufficient to establish probable cause, the "[s]earch Warrant must be voided and the fruits of the search

excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

44.     Here, the paragraphs relied on to establish probable cause, paragraphs ten through twelve, include false statements made by Investigator Humphrey. *See* **Saavedra Forero Affidavit, Exhibit B.**

45.     In paragraph ten, Investigator Humphrey alleges that he personally "observed" Ms. Saavedra Forero in community submission video "with her phone out and holding it in such a way to record or document the events surrounding what was occurring at the Naval ROTC Armory *which included graffiti vandalism to the NAVAL ROTC Armory.*" *See* **Humphrey Affidavit at ¶10, Exhibit A.**

46.     Investigator Humphrey's statements in paragraphs ten through twelve that Ms. Saavedra Forero filmed the graffiti vandalism were made with deliberate falsity. *See* LSF Affidavit.

47.     Investigator Humphrey statements in paragraphs ten through twelve are based on his personal knowledge after viewing community submission videos. As a result, the nature of the statements are such that Investigator Humphrey had to know at the time he made the statements that they were false; therefore, the statements were  made intentionally and in bad faith.

48.     False statements concerning matters in which the affidavit alleges personal knowledge are not subject to the good faith exception because the statements made do "not involve facts that, although asserted in good faith, later turned out to be erroneous." *State v. Jackson, 220 N.C. App. 1, 17, 727 S.E.2d 322, 334 (2012); Franks,* 438 U.S. at 163, 98

S. Ct. at 2680 (1978); *Rugendorf v. United States*, 376 U.S. 528, 533, 84 S. Ct. 825, 828, 11 L. Ed. 2d 887 (1964).

49. In paragraph twelve, Investigator Humphrey attaches two photographs that he alleges show Ms. Saavedra Forero "using her phone to support previously stated facts at the NAVAL ROTC Armory."

50. However, these photographs provide no such support. The photographs do not show Ms. Saavedra Forero filming the graffiti vandalism as Investigator Humphrey alleges in paragraph ten.

51. Instead, these photographs show Ms. Forero filming the constitutionally-protected free speech event on a public sidewalk several dozen feet from the NAVAL ROTC Armory doors where the alleged vandalism occurred and with dozens of individual protestors and construction work obstructing her view of the doors that were allegedly vandalized.

52. The photographs, like the entirety of the affidavit, provide no temporal information, no time stamps or even allegations concerning the time the photographs were taken, to substantiate the conclusory statement that the photographs of Ms. Saavedra Forero filming occurred at the same time as the vandalism.

53. In one of the photographs, it is clear that Ms. Saavedra Forero is filming the individual who is filming her and her phone is angled away from the Naval ROTC building.[2]

_____

[2] Additionally, applying a common sense reading of paragraphs ten through twelve begs the question: if UNC Police have video footage of Ms. Saavedra Forero filming the vandalism, how do they not have video footage of the vandalism itself?

14

54.     If the false statements are removed from the affidavit of UNC-CH Police Department Investigator F.W. Humphrey, the following information remains: (1) that Investigator Humphrey was assigned to investigate multiple cases involving graffiti vandalism to UNC-CH buildings on September 19, 2024; (2) that the building vandalized was the NAVAL ROTC Armory located at 221 South Columbia St. Chapel Hill, NC 27599; (3) that the reported vandalism occurred during a constitutionally protected free speech event, a walkout, that was posted by UNC SJP on their instagram account; (4) that the walkout occurred at approximately 12:40 PM on September 19, 2024, and that UNC SJP individuals who are known to law enforcement, as well as other community organizers, guided demonstrators into buildings on UNC-CH's campus; (5) that Ms. Saavedra Forero was one of the individual organizers guiding demonstrators into buildings during the free speech event and was seen with organizers 45 minutes before the start of the free speech event; (6) that at approximately 1:30PM, unknown demonstrators approached the front doors of the NAVAL ROTC Armory; (7) that prior to UNC-CH Police's arrival, unknown demonstrators began using spray paint cans to create graffiti on parts of the NAVAL ROTC Armory building; (8) and that UNC-CH Police received a report that a fight occurred at the flagpole of the Naval ROTC building as unknown demonstrators were removing the American flag from the flagpole.

55.     The information that remains in the affidavit of then Investigator Humphrey is clearly insufficient, standing alone, to sustain the finding of probable cause, as there is no indication whatsoever that Ms. Saavedra Forero participated, organized, recorded, or was involved in any way with the alleged vandalism that occurred on September 19, 2024.

15

56.     As can be seen from the above analysis of that affidavit, the Defendant has made a substantial preliminary showing as is required under *Franks v. Delaware*.

**B. The Probable Cause Affidavit Relied Only Purely Conclusory Statements; Therefore, the Affidavit Did Not Establish Probable Cause.**

57.     A warrant fails to comply with N.C. Gen. Stat. §15A-244(3) and violates the Fourth Amendment's probable cause requirement when it is based on an affidavit that is 'purely conclusory' and states "only the affiant's . . . belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based." *Illinois v. Gates*, 462 U.S. 213, 288, 103 S. Ct. 2317, 2359, 76 L. Ed. 2d 527 (1983); *State v. Allman*, 369 N.C. 292, 294, 794 S.E.2d 301, 303–04 (2016); *State v. Hyleman,* 324 N.C. 506, 510, 379 S.E.2d 830, 832–33 (1989).

58.     Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. *Gates*, 462 U.S. at 288, 103 S. Ct. at 2359. The issuing officer "must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion...." *Id.* at 278; *State v. Campbell,* 282 N.C. 125, 129–31, 191 S.E.2d 752, 755–56 (1972).

59.     "When the affiant fails to state the substance of information received from other sources and fails to disclose any facts that would lead a magistrate to reasonably believe that evidence of a crime existed. . . .This deficient *factual* statement offered to support an *independent* basis for probable cause cannot stand, regardless of the deference

16

due the [issuing] court." *Hyleman,* 324 N.C. at 510 (citing *State v. Edwards,* 286 N.C. 162, 170, 209 S.E.2d 758, 763 (1974); *State v. Peterson*, 179 N.C. App. 437, 449, 634 S.E.2d 594, 605–06 (2006), *aff'd*, 361 N.C. 587, 652 S.E.2d 216 (2007).

60.     Information relied on to establish probable cause must either be contained in the four corners of the affidavit or have been presented to the issuing court. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 278 (4th Cir. 2004); *See State v. Hyleman,* 324 N.C. 506, 510, 379 S.E.2d 830, 832–33 (1989) (when the affiant fails to state the substance of information received from other sources and fails to disclose any facts that would lead [the issuing court] to reasonably believe that evidence of a crime existed. . . .This deficient *factual* statement offered to support an *independent* basis for probable cause cannot stand, regardless of the deference due the [issuing] court).

61.     Here, Investigator Humphrey states conclusively that community submission videos, which were not presented to the issuing court and details about which are nowhere in the affidavit, show Ms. Saavedra Forero filming the graffiti incident.

62.     As stated above, the affidavit includes no facts concerning when the graffiti incident occurred, when the community submission video was taken, or when Ms. Saavedra Forero was filming the constitutionally protected activity on a public sidewalk as depicted in the photographs included in the affidavit. *State v. Brown*, 248 N.C. App. 72, 80, 787 S.E.2d 81, 87–88 (2016) (determining "bare-bones affidavit" contained insufficient information to establish probable cause and support the issuance of a search warrant because the affidavit failed to state the time the informant observed the alleged criminal activity).

63.     The sole statement in the affidavit that connects Ms. Saavedra Forero in any way to the graffiti incident is Investigator Humphrey conclusory statement based on information not included within the four corners of the affidavit and not presented to the issuing court, specifically a community submission video.

64.     Investigator Humphrey provides no factual details about the community submission video other than his conclusion about what the video shows.

65.     An affiant's conclusory summary of information not included in the affidavit, without the presentment of any underlying facts substantiating the conclusion or any underlying facts concerning the integrity of the informant's information, is not sufficient to establish probable cause.

**C. The Search Warrant Was Overbroad In Violation Of The Fourth Amendment's Particularity Requirement.**

66.     Under the particularity requirement of the Fourth Amendment, a warrant may "not be broader than the probable cause on which it is based." *United States v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006).

67.     "The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description leaves nothing to the discretion of the officers executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010); *United States v. Chavez*, 423 F. Supp. 3d 194, 206 (W.D.N.C. 2019) (finding search warrant for Facebook account violated the Fourth Amendment's particularity requirement when "[t]he compelled disclosure was not limited to the period of time that the crime allegedly occurred . . . [n]or was the disclosure limited

18

to evidence of the crime").

68.     A search warrant is properly issued if "the facts set out in the supporting affidavit [] show some connection or nexus linking" the items sought and the alleged illegal activity. *State v. Bailey*, 374 N.C. 332, 335, 841 S.E.2d 277, 280 (2020).

69.     Even if the Court accepts as true Investigator Humphrey's false and conclusory statements that Ms. Forero filmed the alleged vandalism, the search warrant is overly board in that it seeks Ms. Forero's internet browser history file and correspondence, including email and messages from various social media platforms, specifically Instagram, WhatsApp, Telegram, Signal, and Facebook, despite there being no allegations in the affidavit that there is probable cause to believe Ms. Forero has communications regarding the vandalism incident, has any activity on her social media concerning the vandalism, or has any evidence on her internet browser concerning the vandalism. It also threatens to reveal constitutionally-protected information related to free speech activity and attorney-client privilege.

70.     The probable cause affidavit contains zero nexus linking correspondence, including e-mail correspondence; social media accounts; or internet browsing history to the graffiti vandalism that Ms. Saavedra Forero is not suspected to have participated in.

71.     The overly broad nature of the search warrant, specifically the inclusion of email and other messaging platform communications, is a grave invasion of Ms. Saavedra Forero's right to privacy and creates a substantial risk that attorney-client privileged communications between Ms. Saavedra Forero and her counsel about ongoing criminal matters and future civil matters will be exposed.

72.     Furthermore, a search warrant must be reasonable, and it is an unreasonable and a major intrusion upon Ms. Forero's privacy interests to seize Ms. Forero's cell phone to investigate a minor crime for which she is not suspected to have participated.

73.     Because there is no nexus between facts stated in the affidavit and Ms. Saavedra Forero's internet browser file, social media accounts, and electronic correspondence, seizure of this property violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

74.     No reasonable officer, having presented no facts related to Plaintiff's internet browser history, social media accounts, and electronic correspondence in their affidavit, would have believed that probable cause existed to justify the seizure of those items.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

(a)  Temporarily restrain and preliminarily enjoin the use and review of any information retrieved from Plaintiff's property seized pursuant to the search warrant;

(b)   Order Defendant to immediately notify their officers, agents, employees, and other persons in active concert or participation with them, if preliminary injunctive relief is entered;

(c)  Enter a declaratory judgment stating that the search warrant issued on September 26, 2024, was improperly obtained and is void in violation

of the Fourth Amendment right to be free from unreasonable searches.

(d) Order Defendant to destroy any information retrieved from the property seized.

(e) Award Plaintiff damages for violation of her Fourth Amendment rights; and

(f) Order such other relief as this Court deems just and equitable.

RESPECTFULLY submitted this 28th day of October, 2024.

*/s/ Jaelyn Miller*
Jaelyn Miller
NC Bar No. 56804
Elizabeth Simpson
NC Bar No. 41596
Emancipate NC
PO Box 309
Durham, NC 27702
jaelyn@emancipatenc.org
elizabeth@emancipatenc.org

21

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this day served the foregoing Complaint on the parties via U.S.

Mail, electronic mail, and eFile & Serve as follows:


Charles Marshall
Assistant University Counsel
The University of North Carolina at Chapel Hill
123 W. Franklin Street, Suite 600A
CB #9105
Chapel Hill, NC 27599-9105


*/s/ Jaelyn Miller*
Jaelyn Miller
NC Bar No. 56804
Emancipate NC
PO Box 309
Durham, NC 27702
jaelyn@emancipatenc.org

**EXHIBIT A**

Case 1:24-cv-00930-UA-LPA    Document 1-3    Filed 11/06/24    Page 24 of 33

File No. _____

# SEARCH WARRANT

**STATE OF NORTH CAROLINA**

Orange County

In The General Court Of Justice
District/Superior Court Division

**IN THE MATTER OF**

Laura Saavedra Forero

560 Paul Hardin Dr. Apt 1201
Ram Village 1
Chapel Hill, NC
27514

To any officer with authority and jurisdiction to conduct the search authorized by this Search Warrant:

I, the undersigned, find that there is probable cause to believe that the property and person described in the application on the reverse side and related to the commission of a crime is located as described in the application.

You are commanded to search the premises, vehicle, person and other place or item described in the application for the property and person in question. If the property and/or person are found, make the seizure and keep the property subject to Court Order and process the person according to law.

You are directed to execute this Search Warrant within forty-eight (48) hours from the time indicated on this Warrant and make due return to the Clerk of the Issuing Court.

This Search Warrant is issued upon information furnished under oath or affirmation by the person(s) shown.

**Name Of Applicant**

Investigator F. W. Humphrey

**Name Of Additional Affiant(s)**

| Date Issued | Time Issued | | Name (type or print) | Signature |
|---|---|---|---|---|
| 9-26-24 | 12:33 | ☐ AM ☒ PM | Ms. Bolden | [signature] |

☐ Deputy CSC   ☐ Assistant CSC   ☐ CSC   ☐ Magistrate   ☐ District Ct. Judge   ☒ Superior Ct. Judge

**NOTE:** *When issuing a search warrant, the issuing official must retain a copy of the warrant and warrant application and must promptly file them with the clerk. G.S. 15A-245(b).*

## RETURN OF SERVICE

I certify that this Search Warrant was received and executed as follows:

| | Date Received | Time Received | |
|---|---|---|---|
| | | | ☐ AM ☐ PM |

| | Date Executed | Time Executed | |
|---|---|---|---|
| | | | ☐ AM ☐ PM |

☐ I made a search of _____

_____ as commanded.

☐ I seized the items listed on the attached inventory.

☐ I did not seize any items.

☐ This Warrant WAS NOT executed within forty-eight (48) hours of the date and time of issuance and I hereby return it not executed.

**Name Of Officer Making Return (type or print)**

**Signature Of Officer Making Return**

**Department Or Agency Of Officer** | **Incident Number**

This Search Warrant was delivered to me on the date and at the time shown below when the Office of the Clerk of Superior Court is closed for the transaction of business. By signing below, I certify that I will deliver this Search Warrant to the Office of the Clerk of Superior Court as soon as possible on the Clerk's next business day.

| Date | Time | | Name Of Magistrate (type or print) | Signature Of Magistrate |
|---|---|---|---|---|
| | | ☐ AM ☐ PM | | |

This Search Warrant was returned to the undersigned clerk on the date and time shown below.

| Date | Time | | Name Of Clerk (type or print) | Signature Of Clerk |
|---|---|---|---|---|
| | | ☐ AM ☐ PM | | ☐ Dep. CSC ☐ Asst CSC ☐ CSC |

AOC-CR-119, Rev. 6/19
© 2019 Administrative Office of the Courts

Original - File   Copy - For Search of a Person, to Person from Whom Items Taken.
Copy - For Search of Vehicle/Premises, to Owner or Person in Apparent Control; If No Such Person Present, Leave Copy Affixed Thereon

(Over)

# APPLICATION FOR SEARCH WARRANT

I, Investigator F. W Humphrey of the UNC Chapel Hill Police Department

*(Insert name and address; or if law enforcement officer, name, rank and agency)*

being duly sworn, request that the Court issue a warrant to search the person, place, vehicle, and other items described in this application and to find and seize the property and person described in this application. There is probable cause to believe that *(Describe property to be seized; or if search warrant is to be used for searching a place to serve an arrest warrant or other process, name person to be arrested)*

**SEE ATTACHMENT A**

constitutes evidence of a crime and the identity of a person participating in a crime, *(Name crime)* G.S. § 14-127.1 Graffiti Vandalism

and is located ☐ *(Check appropriate box(es) and fill in specified information)*

☐ in the following premises *(Give address and, if useful, describe premises)*

*(and)*

☒ on the following person(s) *(Give name(s) and, if useful, (describe person(s)*

**SEE ATTACHMENT B**

*(and)*

☐ in the following vehicle(s) *(Describe vehicle(s))*

AOC-CR-119, Side Two, Rev. 6/19
© 2019 Administrative Office of the Courts

☐ *(and)*
☐ *(Name and/or describe other places or items to be searched, if applicable)*

The applicant swears or affirms to the following facts to establish probable cause for the issuance of a search warrant:
**SEE ATTACHMENT C**

SWORN/AFFIRMED AND SUBSCRIBED TO BEFORE ME    Date 9-26-24

Name Of Applicant *(type or print)*  F.W Humphrey

Signature Of Applicant

☐ Clerk Of Superior Court

Date 9.26.24

Signature

☐ Magistrate  ☐ Dep. CSC  ☐ Asst. CSC  ☒ Judge

☐ In addition to the affidavit included above, this application is supported by additional affidavits, attached, attached, made by

☐ In addition to the affidavit included above, this application is supported by sworn testimony, given by

This testimony has been: *(check appropriate box)*
☐ recorded,  ☐ reduced to writing
and I have filed any such writing/recording with the clerk.

**NOTE:** *If more space is needed for any section, continue the statement on an attached sheet of paper with a notation saying "see attachment." Date the continuation and include on it the signatures of applicant and issuing official.*

## ATTACHMENT B

## PERSONS TO BE SEARCHED

Laura Saavedra Forero and any contents in her possession such as a bookbag or other items that could contain a cell phone.

Laura Saavedra Forero is described as a white female with curly black/brown hair with a date of birth of 08/11/2003. A recent picture of Laura Saavedra Forero is listed below.



Investigator F.W Humphrey

University of North Carolina at Chapel Hill Police

Sworn to and subscribed before

Me, the 25 day of September, 2024

Judicial Official

2 | Page

**ATTACHMENT A**

**PROPERTY/EVIDENCE TO BE SEIZED**

- The cellular device used, owned, belonging to, or in possession of Laura Saavedra Forero

- Records evidencing use and/or dominion of a cell phones hard drive including, but not limited to registry and setup information within the cell phones system, and customization to the system's directory structure.

- Any photographs, pictures, digital images, audio files and recording including but not limited to files bearing file extensions such as .JPG, .JPEG, .MPG, .AVI, .MOV, .RA, .RAM, .GIF,. BMP, and/or .WMV.

- Correspondence including, but not limited to electronic mail, chat logs, and/or any electronic messages using applications to include but not limited to Instagram, WhatsApp, Telegram, Signal and/or Facebook.

- Internet browser history file

- This warrant is for the search of the listed property and the seizure of the above-described cell phone data. It is also for the authorization of the State Bureau of Investigation or other law enforcement entity to provide technical assistance to read information stored and contained on the described cell phone listed under Attachment A. This includes using Graykey to gain access to the cell phone. The assisting law enforcement agency shall extract information listed under Attachment B and provide copies of the information discovered to UNC-Chapel Hill Police Department.

Investigator F. W Humphrey

University of North Carolina at Chapel Hill Police

_____

Sworn to and subscribed before

Me, the 26 day of September, 2024

_____

Judicial Official

1 | P a g e

**ATTACHMENT C**

**PROBABLE CAUSE AFFIDAVIT**

**BACKGROUND ON AFFIANT: Forrest Humphrey, The University of North Carolina at Chapel Hill Police Department Investigator employment, educational and Training background is as follows:**

Your affiant, Investigator F. Humphrey being duly sworn, depose and say your affiant is a sworn law enforcement officer for The University of North Carolina at Chapel Hill Police Department. Your affiant began his law enforcement career in February 2014 at The University of North Carolina at Chapel Hill Police Department. Your affiant graduated from Basic Law Enforcement Training (BLET) in December of 2013. Before his time graduating BLET, your affiant earned his associate degree in criminal justice from Alamance Community College. Your affiant has attended and successfully completed Police Law Institute and has prepared and helped or prepared multiple search warrants. Your affiant holds his Intermediate Law Enforcement Certificate from Criminal Justice and Standards Commission.
In September of 2023, your affiant was assigned to the Criminal Investigations Division (CID). Your affiant's duties include but are not limited to creating positive interactions with the community and investigating possible crimes. During his time with the department your affiant has investigated or assisted with the investigation of many quality-of-life issues in the community that your affiant serves in a patrol and investigatory capacity. Your affiant has wrote and assisted with the preparation or execution of multiple search warrants and is familiar with the search warrant process.

Your affiant has attended numerous law enforcement classes throughout his career. This includes but is not limited to; Criminal Interdiction, Background Investigations, and Police Law Institute, Financial Crime and Digital Evidence. Since working in as a police officer, your affiant has assisted and made arrests for larcenies, burglaries, fraud, drug offenses and assault crimes. Therefore, your affiant is familiar with and has experience relating to the practices of the person(s) involved in violation of North Carolina General Statutes.

**AUTHORITY AND JURIDICITON**

**As an investigator with The University of North Carolina at Chapel Hill Police Department your affiant is authorized to investigate crimes involving:** G.S. § 14-127.1 Graffiti Vandalism

_____                                      _____ 9-26-24

*Judicial Official / Date*                                          *Officer / Date*

3 | Page

**ATTACHMENT C (CONT)**

**PROBABLE CAUSE AFFIDAVIT**

**OVERVIEW OF PROBABLE CAUSE**

1. Your affiant was assigned to investigate multiple cases involving graffiti vandalism to buildings owned or controlled by The University of North Carolina at Chapel Hill (UNC Chapel Hill) on September 19, 2024 (2024-001810, 2024-001811, 2024-001813).

2. These building included the Naval ROTC Armory located at 221 South Columbia St Chapel Hill, NC 27599.

3. The reported graffiti incidents occurred during a scheduled free speech event that was posted by UNC SJP on their Instagram account encouraging a walk-out to the campus community.

4. This walk-out occurred at approximately 12:40pm on September 19, 2024.  The demonstrators then were guided by known-to-law enforcement UNC SJP members and other community organizers to walk into several buildings around the campus of UNC Chapel Hill.

5. One of these known individuals that was observed by law enforcement was Laura Saavedra Forero.

6. Your affiant observed Laura Saavedra Forero on multiple university camera systems guiding and directing demonstrators to different buildings where reports of graffiti were taken later. She was also seen with the same apparent organizers approximately 45 minutes before the event was scheduled to begin.

7. Eventually, at approximately 1:30pm on September 19, 2024, the demonstration made its way to the front doors of the Naval ROTC Armory on the west side of the building.

8. A few demonstrators then began to use spray paint cans to create graffiti on the sign, doors and columns of the building.

9. UNC Chapel Hill Police soon received a report of a fight in progress at the flagpole of the Naval ROTC building as demonstrators were removing the American Flag from the flag pole.

10. In cellphone video obtained by community submissions to law enforcement information requests, Laura Saavedra Forero is observed and known by your affiant to be in one of these videos with her phone out and holding it in such a way to record or document the events surrounding what was occurring at the Naval ROTC Armory which included graffiti vandalism to the Naval ROTC Armory.

_Judicial Official / Date_

9-26-24

_Officer / Date_

4 | P a g e

**ATTACHMENT C (CONT)**

**PROBABLE CAUSE AFFIDAVIT**

11. Due to Laura Saavedra Forero's apparent involvement, as mentioned above, in the orchestration of the event as well as using her cell phone to record while criminal activity was occurring or about to occur there would be reason to believe that photos, videos, messaging or communication related to the crime of Graffiti Vandalism would exist on her cell phone from the Naval ROTC Armory.

12. Listed below are 2 images of Laura Saavedra Forero using her phone to support previously stated facts at the Naval ROTC Armory.




_____
*Judicial Official / Date*

_____ 9-26-24
*Officer / Date*

5 | Page

## ATTACHMENT C (CONT)

## PROBABLE CAUSE AFFIDAVIT

In my training and experience, it is common for people who take pictures and videos to keep them stored on the cellphone and within different cellphone applications that they took the digital media with.

Based on the facts listed above your affiant, Investigator F. W Humphrey, believes there is probable cause that there would be evidence for the aforementioned crime within Laura Saavedra Forero's cell phone and cell phone related data.

The evidence sought and listed above in this affidavit will aid in the investigation of the crimes of: G.S. § 14-127.1 Graffiti Vandalism

Investigator F.W Humphrey

University of North Carolina at Chapel Hill Police

Sworn to and subscribed before

Me, the ___ day of September, 2024

Judicial Official

6 | P a g e

**EXHIBIT B**

STATE OF NORTH CAROLINA

ORANGE COUNTY

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION

IN THE MATTER OF

LAURA SAAVEDRA FORERO

**AFFIDAVIT**

I, Laura Saavedra Forero, being duly sworn, deposed and say the following statement under oath:

1. I am over 18 years old and of sound mind.
2. I am a student at the University of North Carolina-Chapel Hill (UNC CH).
3. On September 27, 2024, UNC CH police officers knocked on my door to execute a search warrant and seize my cellular device.
4. The search warrant stated that my device was being seized because I filmed criminal activity, specifically vandalism of the NAVAL ROTC Armory on September 19, 2024.
5. On September 19, 2024, I attended a free speech event in support of Palestine and to call for an end to U.S. military support for Israel.
6. Although I did film some aspects of the free speech event, at no time did I film any illegal activity, including, but not limited to, vandalism of the NAVAL ROTC Armory or vandalism of any other property located on UNC CH's campus.
7. The statements in paragraphs 10 and 11 of the search warrant provided to me state that I used my cell phone to record criminal activity occurring or about to occur. These statements are false.
8. I attest that on September 19, 2024, I did not record any illegal activity pertaining to vandalism while I participated in the free speech event, which is constitutionally-protected activity.

I solemnly declare and affirm that the facts stated in this affidavit are true and accurate to the best of my knowledge, belief, and personal experience.

Executed on _september 30_, 2024.

_Laura Saavedra_
Laura Saavedra Forero

North Carolina, County of __Orange__

I, _Tejal Patel_, a Notary Public for
_Wake_ County, North Carolina, do hereby
certify that _Laura Saavedra Forero_ personally appeared
before me this day and acknowledged the due execution
of the foregoing instrument.

Witness my hand and official seal, this the _30_ day
of _September_, 20_24_.



(Official Seal)          _Tejal Patel_
                        Official Signature of Notary

_TEJAL PATEL_, Notary Public
Notary's printed or typed name
My Commission Expires: _November 28 2026_

TEJAL PATEL
NOTARY
My Comm. Exp.
11-28-2026
PUBLIC
WAKE COUNTY, NC