## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LAURA SAAVEDRA FORERO<br><br>*Plaintiff,*<br><br>v.<br><br>UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL POLICE DEPARTMENT and FORREST WADE HUMPHREY, *in his individual and official capacity,* MATTHEW DODSON, *in his individual and official capacity,* JEFFREY DAVIS, *in his official and individual capacity,*<br><br>*Defendants.* | **SECOND AMENDED COMPLAINT 1:24-cv-00930-UA-LPA** |

NOW COMES, Plaintiff Laura Saavedra Forero (hereinafter "Plaintiff" or "Ms. Saavedra Forero") and brings this Complaint against The University of North Carolina at Chapel Hill, UNC Police Department Investigator Forrest Wade Humphrey, UNC Police Department officers Matthew Dodson and Jeffrey Davis (collectively, "Defendants").

## <u>NATURE OF THE ACTION</u>

1.     This action challenges the validity of a highly invasive, broad, and vague search warrant for vast swaths of a university student's private information when that student has not been accused of committing any crime or aiding in the perpetration of any crime.

2.     Instead, the apparent basis of obtaining the search warrant for the university student's cell phone was her constitutionally-protected participation in First Amendment speech acts, including organizing a peaceful walk-out and free speech event at the University of North Carolina, Chapel Hill (hereinafter "UNC CH").

3.     On September 19, 2024, Ms. Saavedra Forero participated in a free speech event on UNC CH's campus, along with dozens if not hundreds of individuals. At some point on that

same day, there was an unrelated misdemeanor graffiti incident at the NAVAL ROTC building located on UNC CH's campus.

4.      While many of the demonstration's attendees were wearing hospital masks, UNC CH Police Department was able to identify Ms. Saavedra Forero because she is a wheelchair user, and therefore, easily identified and picked out in a crowd.

5.      On September 26, 2024, Defendant Forrest Wade Humphrey submitted a probable cause affidavit seeking a search warrant in Orange County Superior Court for Ms. Saavedra Forero's cellular phone, access to several social media platforms, any correspondence, including email, and Ms. Saavedra Forero's entire internet browser history file. The property to be seized in both the affidavit and search warrant contain no temporal restrictions or designations.

6.      There are no allegations in the probable cause affidavit that Ms. Saavedra Forero participated in the graffiti incident. Instead, the probable cause affidavit seeks large swaths of Ms. Saavedra Forero's personal and private information without any temporal restrictions because they allegedly obtained cellphone video "by community submissions to law enforcement information requests," that show Ms. Saavedra Forero "with her phone out and holding it in such a way to record or document the events surrounding what was occurring at the Naval ROTC Armory which included graffiti vandalism to the NAVAL ROTC Armory." This purely conclusory and false statement in Defendant Humphrey's affidavit is the sole statement in the affidavit connecting Ms. Saavedra Forero to the graffiti incident.

7.      Defendant Humphrey provides no facts to support the conclusory and false statement that Ms. Saavedra Forero utilized her phone "to record the events surrounding what was occurring at the Naval ROTC Armory which included graffiti vandalism to the NAVAL ROTC Armory." The affidavit contains no factual information about the community submission video,

2

namely no factual information about who filmed the video, when, and where. The affidavit is devoid of any facts to substantiate the conclusory and false statement that Ms. Saavedra Forero recorded the graffiti incident.

8.     Investigator Humphrey admits twice in his affidavit that UNC CH Police are already in possession of video footage related to the September 19, 2024, demonstration and the graffiti incident, thus begging the question as to why Ms. Forero's alleged photographs and/or video would be crucial to investigate the misdemeanor graffiti incident.

9.     The probable cause affidavit included zero allegations that there is any evidence about the graffiti incident on any of Ms. Saavedra Forero's social media platforms, zero allegations that there is any evidence about the graffiti incident in any of Ms. Saavedra Forero's correspondence or that Ms. Saavedra Forero knows or has a connection to any individuals involved in the graffiti incident, and zero allegations that there is any evidence about the graffiti incident in Ms. Saavedra Forero's internet browser history. Yet, the search warrant permits UNC Police to search all of this information and contains zero temporal restrictions for this information.

10.     On September 27, 2024, Defendants Humphrey, Dodson, and Davis served the warrant on Ms. Saavedra Forero at her dormitory on UNC CH's campus.

11.     At the time the warrant was served, Ms. Saavedra Forero was speaking with her counsel on speaker phone who advised her to turn off the cellular device and provide it to the Defendants. Despite the fact that Defendants heard and were aware that Ms. Saavedra Forero intended to provide Defendants with her phone after she turned it off, they declared that turning off the cellular device was destroying evidence and tackled her.

12.     In tackling Ms. Saavedra Forero, these three grown men knocked her out of her wheelchair, causing her to fall to the ground. Ms. Saavedra Forero was then charged with Resist,

Delay, and Obstruct under N.C. Gen. Stat. § 14-223 for "attempting to destroy evidence."

13.     In light of the glaring lack of probable cause and overbreadth of the search warrant, the severe and unnecessary force utilized to retrieve Ms. Saavedra Forero's cellular device, and UNC CH's targeting of Ms. Saavedra Forero because of her disability, as well as their inability to reasonably accommodate Ms. Saavedra Forero when serving the search warrant, Plaintiff respectfully requests declaratory relief that the Defendants violated her Fourth Amendment rights to be free from search and seizure and to be free from excessive force, and her right to reasonable accommodations under the Americans with Disabilities Act.

14.     Ms. Saavedra Forero remains a student at UNC CH and intends to continue engaging in First Amendment protected activity on UNC CH's campus, even after she graduates. Therefore, Plaintiff respectfully requests injunctive relief prohibiting Defendants from reviewing and possessing any personal or private information retrieved pursuant to the search warrant. Plaintiff also respectfully requests this Court enter injunctive relief prohibiting Defendants from utilizing Ms. Saavedra Forero's participation in protests or demonstrations or her status as a wheelchair user as a basis for subjecting her to highly invasive searches and seizures when she has not been accused of committing a crime.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under the U.S. Constitution and laws of the United States; and pursuant to 28 U.S.C. § 1343 because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' civil rights, and to secure equitable or other relief for the violation of those rights.

16.     This Court has supplemental jurisdiction over the North Carolina state and common law claims pursuant to 28 U.S.C. § 1367.

4

17.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as Rule 57 of the Federal Rules of Civil Procedure.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). Execution of the search warrant that is the subject of this case occurred in this District and Plaintiff lives in this District.

## **PARTIES**

### **Plaintiffs**

19.     Plaintiff Laura Saavedra Forero is a student at the University of North Carolina at Chapel Hill, NC (hereinafter "UNC-CH") and resides in the dormitory at UNC-CH. Ms. Saavedra Forero's cellular phone is the subject of the search warrant at issue in this case. Ms. Saavedra Forero has a direct and immediate privacy interest in the property seized.

### **Defendants**

20.     Defendant University of North Carolina at Chapel Hill Police Department (hereinafter "UNC PD") is public university and the agency that employs Defendants Humphrey, Dodson, and Davis. UNC PD is currently in possession of the property to be seized in the warrant and executed the search warrant on Ms. Saavedra Forero at her university dormitory.

21.     Defendant Forrest Wade Humphrey ("Defendant Humphrey") is an investigator employed with UNC CH Police Department. Defendant Humphrey was the affiant that sought issuance of the search warrant and alleged the existence of probable cause. Defendant Humphrey also participated in the service of the warrant and the excessive force enacted on Ms. Saavedra Forero. Defendant Humphrey did so under color of law and in his capacity as an employee of UNC CH Police Department.

22.     Defendant Matthew Dodson ("Defendant Dodson") is a male officer employed with

UNC CH Police Department. Defendant Dodson participated in the service of the warrant and the excessive force enacted on Ms. Saavedra Forero. Defendant Dodson did so under color of law and in his capacity as an employee of UNC CH Police Department.

23.     Defendant Jeffrey Davis ("Defendant Davis") is a male officer employed with UNC CH Police Department. Defendant Davis participated in the service of the warrant and the excessive force enacted on Ms. Saavedra Forero. Defendant Davis did so under color of law and in his capacity as an employee of UNC CH Police Department.

## FACTUAL ALLEGATIONS

### I.     Application for the Search Warrant

24.     On September 19, 2024, dozens, if not hundreds, of university students and community members held a free speech event on UNC CH's campus. The purpose of the event was to call for UNC CH to divest from Israeli affiliates because of Israel's ongoing humanitarian rights violations in Gaza.

25.     Ms. Saavedra Forero was one of dozens, if not hundreds, of individuals that attended the free speech event.

26.     During the event, Ms. Saavedra Forero, along with the other demonstrators, marched throughout UNC CH's campus, including to the NAVAL ROTC building.

27.     At some point after the free speech event concluded a graffiti incident occurred at the NAVAL ROTC building. The graffiti was spray painted on the doors of the NAVAL ROTC building and the sign indicating the building's name.

28.     Ms. Saavedra Forero had no involvement in the graffiti vandalism and UNC Police Department do not allege that she had any involvement in the graffiti incident.

29.     On September 26, 2024, Investigator Humphrey sought issuance of a search

6

warrant and submitted a probable cause affidavit to Judge Allen Baddour in Orange County Superior Court. *See* **Humphrey Affidavit, Exhibit A.**

30. The probable cause affidavit contained the following twelve paragraphs:

- Paragraph 1 - Your affiant was assigned to investigate multiple cases involving graffiti vandalism to building owned or controlled by the University of North Carolina at Chapel Hill (UNC Chapel Hill) on September 19, 2024 (2024-001810, 2024-001811, 2024-001813).

- Paragraph 2 - These building (sic) included the Naval ROTC Armory located at 221 South Columbia St Chapel Hill, NC 27599.

- Paragraph 3 - The reported graffiti incidents occurred during a scheduled free speech event that was posted by UNC SJP on their Instagram account encouraging a walk-out to the campus community.

- Paragraph 4 - This walk-out occurred at approximately 12:40 pm on September 19, 2024. The demonstrators then were guided by known-to-law enforcement UNC SJP members and other community organizers to walk into several buildings around the campus of UNC Chapel Hill.

- Paragraph 5 - One of these known individuals that was observed by law enforcement was Laura Saavedra Forero.

- Paragraph 6 - Your affiant observed Laura Saavedra Forero on multiple university camera systems guiding and directing demonstrators to different buildings where reports of graffiti were taken later. She was also seen with the same apparent organizers approximately 45 minutes before the event was scheduled to begin.

- Paragraph 7 - Eventually, at approximately 1:30 PM on September 19, 2024, the demonstration made its way to the front doors of the Naval ROTC Armory on the west side of the building.

- Paragraph 8 - A few demonstrators then began to use spray paint cans to create graffiti on the sign, doors and columns of the building.

- Paragraph 9 - UNC Chapel Hill Police soon received a report of a fight in progress at the flagpole of the Naval ROTC building as demonstrators were removing the American Flag from the flag pole.

- Paragraph 10 - In cellphone video obtained by community submissions to law enforcement information requests, Laura Saavedra Forero is observed and known by your affiant to be in one of these videos with her phone out and holding it in such a way to record or document the events surrounding what was occurring at the Naval ROTC Armory which included graffiti vandalism to the NAVAL ROTC Armory.

- Paragraph 11 - Due to Laura Saavedra Forero's apparent involvement, as mentioned above, in the orchestration of the event as well as using her cell phone to record while criminal activity was occurring or about to occur there would be reason to believe that photos, videos, messaging or communication related to the crime of Graffiti Vandalism would exist on her cell phone from the Naval ROTC Armory.

- Paragraph 12 - Listed below are 2 images of Laura Saavedra Forero using her phone to support previously stated facts at the Naval ROTC Armory.





31. The property to be seized pursuant to the warrant was as follows:

- The cellular device used, owned, belonging to, or in possession of Laura

Saavedra Forero

- Records evidencing use and/or dominion of a cell phones (sic) hard drive including, but not limited to registry and setup information within the cell phones system, and customization to the system's directory structure

- Any photographs, pictures, digital images, audio files, and recording including but not limited to files bearing file extensions such as .JPG, .JPEG, .MPG, .AVI, .MOV, .RA, .RAM, .GIF, .BMP, and/or .WMV.

- Correspondence including, but not limited to electronic mail, chat logs, and/or any electronic messages using applications to include but not limited to Instagram, WhatsApp, Telegram, Signal, and/or Facebook

- Internet browser history file

32.     Defendant Humphrey probable cause affidavit contains zero information purporting to connect Ms. Saavedra Forero's internet history file, social media activity and correspondence, or email correspondence to the graffiti incidence. ***See* Humphrey Affidavit, Exhibit A.**

33.     There are no allegations in the probable cause affidavit that Ms. Saavedra Forero participated, aided, or abetted in any way the graffiti vandalism. *Id.*

34.     There are no allegations in the probable cause affidavit that Ms. Saavedra Forero knew or had contact with any individuals suspected of engaging in the graffiti vandalism. *Id.*

35.     Therefore, no reasonable officer would believe they had probable cause to retrieve Ms. Saavedra Forero's internet history file, social media activity and correspondence, or email correspondence to the graffiti incident occurred at the same time as the free speech event and that Ms. Saavedra Forero.

10

36.     The search warrant is overly broad in that it seeks private and personal information and correspondence without providing any probable cause supporting the notion that this information contains evidence related to the vandalism incident.

37.     Defendant Humphrey deliberately sought this information knowing he did not have probable cause because he wanted access to information about Ms. Saavedra Forero and other demonstrators' First Amendment protected activity.

38.     He sought access to this information through Ms. Saavedra Forero because she is a wheelchair user and therefore, she was easily identifiable to UNC PD as a member of the crowd.

39.     The probable cause affidavit also contains no factual statements establishing the time the graffiti vandalism occurred, no factual statements establishing the duration of the free speech demonstration Ms. Saavedra Forero attended, and no factual statements establishing Ms. Saavedra Forero filmed at the same time the graffiti vandalism occurred.

40.     Instead, the lone paragraphs in the probable cause affidavit purporting to establish probable cause to seize Ms. Saavedra Forero's cellular device are paragraphs three, ten, and eleven.

41.     These paragraphs are conclusory statements by Defendant Humphrey that the graffiti incident occurred during the free speech event and that, according to a community submission video of which the affidavit contains no factual details, Ms. Saavedra Forero had her "phone out and holding it in such a way to record or document the events surrounding what was occurring at the Naval ROTC Armory which included graffiti vandalism to the NAVAL ROTC Armory."

42.     Defendant Humphrey makes clear in paragraph eleven that the probable cause is, at least partially, based on Ms. Saavedra Forero's "orchestration of the [free speech] event."

43.     Ms. Saavedra Forero's participation and organization of First Amendment

protected activity is not a lawful basis for her to be subjected to an extraordinarily broad search warrant when she has not been accused of committing any crime whatsoever.

44. In addition to paragraphs ten through twelve being purely conclusory statements that are not supported by any factual information provided within the four corners of the affidavit, these statements are also false statements made in bad faith because Ms. Forero did not record or document the graffiti incident.

45. For the reasons detailed above, Defendant Humphrey's search of Ms. Saavedra Forero's cellphone was a violation of her Fourth Amendment right to be free from unreasonable searches.

46. Defendants continue to be in possession of Ms. Saavedra Forero's private information, which they obtained via an illegal search.

## II. Execution of the Search Warrant

47. On September 27, 2024, Defendants Humphrey, Dodson, and Davis ("Defendant Officers") served Ms. Saavedra Forero with the search warrant at her dormitory located on UNC CH's campus.

48. Upon orders of the Defendant Officers, Ms. Saavedra Forero exited her dorm room and Defendant Humphrey stated that he needed to read her the warrant.

49. At the time Ms. Saavedra Forero exited her dorm room she was on the phone with her legal counsel, Gina Balamucki. The call was on speaker-phone so both Ms. Saavedra Forero and the Defendant Officers could hear Attorney Balamucki speaking with Ms. Saavedra Forero.

50. Defendant Humphrey informed Laura that the search warrant was for her cellphone, but explicitly stated that Ms. Saavedra Forero could finish her conversation with her attorney and that her phone would be seized *at the conclusion of that conversation.*

12

51.     Defendant Humphrey also informed Ms. Saavedra Forero that her attorney could remain on the phone with her while he read her the search warrant.

52.     Within seconds of Defendant Humphrey's orders, Attorney Balamucki told Ms. Saavedra Forero to hang up the call, turn off her phone, and hand it over to the Defendant Officers.

53.     Before Ms. Saavedra Forero could respond to Attorney Balamucki, Defendant Dodson, suddenly and without any warning, stated something to the effect of: "No, we are not playing these games" and lunged for Ms. Saavedra Forero's phone.

54.     Given the lead officer, Defendant Humphrey, had approximately 30 seconds earlier instructed Ms. Saavedra Forero that her phone would be seized *after her conversation with her attorney* and given that *she was still on the phone with her attorney*, Defendant Dodson's sudden lunge shocked Ms. Saavedra Forero.

55.     The three men, each weighing well over 180 lbs, tackled Ms. Saavedra Forero in a manner that threw her from her wheelchair. They tackled her even though they had no indication that Ms. Saavedra Forero did not intend to comply with the search warrant and provide them her phone, and even though all indications from the telephone conversation with the attorney were that Ms. Saavedra Forero planned to comply.

56.     In addition to causing Ms. Saavedra Forero physical injury, this action also led to damage to Ms. Saavedra Forero's very expensive wheelchair and to the heavy wheelchair falling on top of Ms. Saavedra Forero.

57.     After the Defendant Officers were in possession of Ms. Saavedra Forero's cellphone and Ms. Saavedra Forero returned to her wheelchair, the Defendant Officers informed Ms. Saavedra Forero had been tackled because her turning off her phone amounted to the destruction of evidence.

13

58.     Never at any point prior to tackling her did any Defendant Officer instruct Ms. Saavedra Forero not turn off her phone, nor did they instruct her that turning off her phone amounted to destroying evidence.

59.     Defendant Humphrey then charged Ms. Saavedra Forero with Resist, Delay, and Obstruct for attempting to destroy evidence by turning off her phone.

60.     In an email sent to the UNC CH student body, UNC CH Police Chief Brian James confirmed that Ms. Saavedra Forero was charged for her attempt to "destroy evidence" by turning off her phone. *See* **Exhibit B** ("While the officers were speaking with them, the student attempted to turn off the phone which would have made evidence nearly impossible to obtain. . . .The officers issued a citation for "resist, delay and obstruct" for the student's attempt to destroy evidence.")

61.     Any individual with a modicum of understanding about how cellular devices operate would know that turning off a cellphone does not result in the destruction of its contents. Therefore, no reasonable officer would think that turning off a cellphone before handing it to the officer constituted an attempt to destroy evidence.

62.     No reasonable officer would think it was necessary for three grown men to tackle and throw a disabled individual from her wheelchair to retrieve a phone from her possession when both her and her attorney had already indicated that they planned to  turn over the cellphone voluntarily.

63.     Additionally, this is the second time UNC CH Police have engaged in excessive force and knocked Ms. Saavedra Forero out of her wheelchair, making it apparent that Ms. Saavedra Forero is at ongoing risk of continuing to have her rights under both the American with Disabilities Act and the Fourth Amendment violated.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE RIGHT TO BE FREE FROM UNREASONABLE SEARCHES IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983
*On Behalf of Plaintiff Against Defendant UNC CH and Defendants Humphrey, Dodson, and Davis in both their official and individual capacities*

64.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

65.     Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of the right to be free from unreasonable searches under the Fourth Amendment.[1]

66.     A § 1983 claim requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).

67.     Government officials sued in their individual capacities are "persons" within the meaning of the statute, although they may be entitled to qualified immunity. *Id.* at 26, 112 S.Ct. 358.

68.     When a "plaintiff is seeking injunctive relief, then the state official acting in an official capacity is a person under 42 U.S.C. § 1983, and 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *see also Jennings v. Univ. of N. Carolina at Chapel Hill*, 240 F. Supp. 2d 492, 499 (M.D.N.C. 2002).

---

[1] References to the Fourth Amendment include the Fourth Amendment as applied to the States through the Fourteenth Amendment.

69.     Accordingly, an action for injunctive relief against the individual Defendants acting in their official capacities can be brought.

70.     The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

71.      It is axiomatic that probable cause serves as the basis for the issuance of search warrants, *see* U.S. Const. Amend IV.

72.     The Amendment was crafted to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Carpenter v. United States,* 585 U.S. 296, 138 S. Ct. 2206, 2213, 201 L.Ed.2d 507 (2018).

73.     It is the Framers' "response to the reviled 'general warrants' and 'writs of assistance' of the colonial area, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Riley v. California*, 573 U.S. 373, 403, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014).

74.     The Fourth Amendment secures the "'privacies of life' against 'arbitrary power.'" *Carpenter*, 138 S. Ct. at 2214 and the "central aim" of the Amendment is "to place obstacles in the way of a too permeating police surveillance." *Id.*; *United States v. Chavez*, 423 F. Supp. 3d 194, 202 (W.D.N.C. 2019).

75.     "As with sealed packages and private phone calls, it is objectively reasonable for an individual to expect privacy in non-public content that is entrusted to a social media website as the intermediary of the ultimate recipient." *Chavez*, 423 F. Supp. 3d at 203.

76.     "A narrower reading would fail to recognize how 'technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes.'" *Id.*

16

(quoting Carpenter, 138 S. Ct. at 2214). "Through Facebook and other social media sites, users instantaneously convey intimate, momentous, and sometimes weighty information to close friends and family members spanning the entire globe." *Chavez*, 423 F. Supp. 3d at 203; Cf. *United States v. Warshak*, 631 F.3d 266, 284 (6th Cir. 2010).

77.     Because an individual "has a legitimate expectation of privacy in his non-public [Social Media] content, the Fourth Amendment commands officers to obtain a *valid* warrant before searching that content." Chavez, 423 F. Supp. 3d at 205 (citing *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018)) (emphasis added).

78.     Seizure of a cell phone is a particularly acute and grave intrusion on personal privacy, and "differs from other physical objects both quantitatively and qualitatively, given their immense storage capacity." *Riley v. California*, 134 S.Ct. 2473, 2478 (2014).

79.     "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Grady v. North Carolina*, 575 U.S. 306, 310 (2015).

## A. Execution of the Search Warrant Violated Plaintiff's Fourth Amendment Rights Because It Was Based on False Statements Made in Bad Faith.

80.     "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV.

81.     "When an officer improperly obtains a search warrant using deceptive falsities or omissions and uses that ill-gotten warrant to search and seize property, the Fourth Amendment's right to be free from unreasonable searches and seizures is violated." *Smith v. Travelpiece,* 31 F.4th 878, 884 (4th Cir. 2022) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990)).

17

82.     To violate the Fourth Amendment, "the false statements or omissions must be 'material,' that is, 'necessary to the finding of probable cause.'" *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014) (citing *Miller v. Prince George's Cnty., Md.,* 475 F.3d 621, 628 (4th Cir.2007) (alteration omitted) (quoting *Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978))).

83.     Materiality is determined by "excis[ing] the offending inaccuracies" and assessing whether the remaining statements, excluding the misstatements, "would establish probable cause." *Miller,* 475 F.3d at 628.

84.     Furthermore, the false statements must have been made "deliberately or with a reckless disregard for the truth," which may be proved by showing that "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* at 627.

85.     Once shown that the affidavit's remaining contents are insufficient to establish probable cause, the "Search Warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

86.      Here, the paragraphs relied on to establish probable cause, paragraphs ten through twelve, include false statements made by Investigator Humphrey. *See* **Saavedra Forero Affidavit, Exhibit C.**

87.     In paragraph ten, Defendant Humphrey alleges that he personally "observed" Ms. Saavedra Forero in community submission video "with her phone out and holding it in such a way to record or document the events surrounding what was occurring at the Naval ROTC Armory *which included graffiti vandalism to the NAVAL ROTC Armory.*" *See* **Humphrey Affidavit at ¶10, Exhibit A.**

18

88.     Defendant Humphrey's statements in paragraphs ten through twelve that Ms. Saavedra Forero filmed the graffiti vandalism were made with deliberate falsity. *See* **Saavedra Forero Affidavit, Exhibit C.**

89.     Defendant Humphrey statements in paragraphs ten through twelve are based on his personal knowledge after viewing community submission videos. As a result, the nature of the statements are such that Defendant Humphrey had to know at the time he made the statements that they were false.

90.     Upon information and belief, at the time Defendant Humphrey made the statements in paragraphs ten through twelve, he knew the statements were false and he made the statements intentionally, in bad faith, and in reckless disregard for the truth.

91.     False statements concerning matters in which the affidavit alleges personal knowledge are not subject to the good faith exception because the statements made do "not involve facts that, although asserted in good faith, later turned out to be erroneous." *State v. Jackson, 220 N.C. App. 1, 17, 727 S.E.2d 322, 334 (2012); Franks,* 438 U.S. at 163, 98 S. Ct. at 2680 (1978); *Rugendorf v. United States*, 376 U.S. 528, 533, 84 S. Ct. 825, 828, 11 L. Ed. 2d 887 (1964).

92.     Given that Defendant Humphrey relied on his own personal knowledge about the community submission videos when he made the false statement, he knew at the time he made them that the statements were false, and therefore, made them in bad faith and with reckless disregard for the truth.

93.     In paragraph twelve, Defendant Humphrey attaches two photographs that he alleges show Ms. Saavedra Forero "using her phone to support previously stated facts at the NAVAL ROTC Armory."

94.     However, these photographs provide no such support. The photographs do not

show Ms. Saavedra Forero filming the graffiti vandalism as Defendant Humphrey alleges in paragraph ten.

95.     Instead, these photographs show Ms. Saavedra Forero filming the constitutionally-protected free speech event on a public sidewalk several dozen feet from the NAVAL ROTC Armory doors where the alleged vandalism occurred and with dozens of individual protestors and construction work obstructing her view of the doors that were allegedly vandalized.

96.     The photographs, like the entirety of the affidavit, provide no temporal information, no time stamps or even allegations concerning the time the photographs were taken, to substantiate the conclusory statement that the photographs of Ms. Saavedra Forero filming occurred at the same time as the vandalism.

97.     In one of the photographs, it is clear that Ms. Saavedra Forero is filming the individual who is filming her and her phone is angled away from the Naval ROTC building.[2]

98.     If the false statements are removed from the affidavit of Defendant Humphrey, the following information remains: (1) that Defendant Humphrey was assigned to investigate multiple cases involving graffiti vandalism to UNC CH buildings on September 19, 2024; (2) that the building vandalized was the NAVAL ROTC Armory located at 221 South Columbia St. Chapel Hill, NC 27599; (3) that the reported vandalism occurred during a constitutionally protected free speech event, a walkout, that was posted by UNC SJP on their Instagram account; (4) that the walkout occurred at approximately 12:40 PM on September 19, 2024, and that UNC SJP individuals who are known to law enforcement, as well as other community organizers, guided

---

[2] Additionally, applying a common sense reading of paragraphs ten through twelve begs the question: if UNC Police have community-submission video footage of Ms. Saavedra Forero filming the vandalism, how do they not have video footage of the vandalism itself?

demonstrators into buildings on UNC CH's campus; (5) that Ms. Saavedra Forero was one of the individual organizers guiding demonstrators into buildings during the free speech event and was seen with organizers 45 minutes before the start of the free speech event; (6) that at approximately 1:30PM, unknown demonstrators approached the front doors of the NAVAL ROTC Armory; (7) that prior to UNC CH Police's arrival, unknown demonstrators began using spray paint cans to create graffiti on parts of the NAVAL ROTC Armory building; (8) and that UNC CH Police received a report that a fight occurred at the flagpole of the Naval ROTC building as unknown demonstrators were removing the American flag from the flagpole.

99.     The information that remains in the affidavit of Defendant Humphrey is clearly insufficient, standing alone, to sustain the finding of probable cause because there are no factual details within the four corners of the affidavit establishing that Ms. Saavedra Forero participated, organized, recorded, or was involved in any way with the alleged vandalism that occurred on September 19, 2024.

**B. The Probable Cause Affidavit Relied Only Purely Conclusory Statements; Therefore, the Affidavit Did Not Establish Probable Cause.**

100.     A warrant violates the Fourth Amendment's probable cause requirement when it is based on an affidavit that is 'purely conclusory' and states "only the affiant's . . . belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based." *Illinois v. Gates*, 462 U.S. 213, 288, 103 S. Ct. 2317, 2359, 76 L. Ed. 2d 527 (1983); *State v. Allman*, 369 N.C. 292, 294, 794 S.E.2d 301, 303–04 (2016); *State v. Hyleman,* 324 N.C. 506, 510, 379 S.E.2d 830, 832–33 (1989).

101.     Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. *Gates*, 462 U.S. at 288, 103 S. Ct. at 2359. The issuing officer "must judge for himself the

21

persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion...." *Id.* at 278; *State v. Campbell,* 282 N.C. 125, 129–31, 191 S.E.2d 752, 755–56 (1972).

102.    "When the affiant fails to state the substance of information received from other sources and fails to disclose any facts that would lead a magistrate to reasonably believe that evidence of a crime existed. . . .This deficient *factual* statement offered to support an *independent* basis for probable cause cannot stand, regardless of the deference due the [issuing] court." *Hyleman,* 324 N.C. at 510 (citing *State v. Edwards,* 286 N.C. 162, 170, 209 S.E.2d 758, 763 (1974); *State v. Peterson*, 179 N.C. App. 437, 449, 634 S.E.2d 594, 605–06 (2006), *aff'd*, 361 N.C. 587, 652 S.E.2d 216 (2007).

103.    Information relied on to establish probable cause must either be contained in the four corners of the affidavit or have been presented to the issuing court. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 278 (4th Cir. 2004); *See State v. Hyleman,* 324 N.C. 506, 510, 379 S.E.2d 830, 832–33 (1989).

104.    Here, Defendant Humphrey states conclusively that community submission videos, which were not presented to the issuing court and details about which are nowhere in the affidavit, show Ms. Saavedra Forero filming the graffiti incident.

105.    As stated above, the affidavit includes no facts concerning when the community submission video was taken or when Ms. Saavedra Forero was filming the constitutionally protected activity on a public sidewalk as depicted in the photographs included in the affidavit. *State v. Brown*, 248 N.C. App. 72, 80, 787 S.E.2d 81, 87–88 (2016) (determining "bare-bones affidavit" contained insufficient information to establish probable cause and support the issuance of a search warrant because the affidavit failed to state the time the informant observed the alleged

22

criminal activity).

106.     While the affidavit states that the alleged vandalism was reported around 1:30PM, it does not state what time Ms. Saavedra Forero is depicted filming or what time the community submission video was recorded.

107.     It also belies all common sense that UNC PD is in possession of a community submission video showing Ms. Saavedra Forero filming the vandalism, but not showing the graffiti vandalism itself.

108.     The sole statement in the affidavit that connects Ms. Saavedra Forero in any way to the graffiti incident is Defendant Humphrey's conclusory statements based on information not included within the four corners of the affidavit and not presented to the issuing court, specifically a community submission video.

109.     Defendant Humphrey provides no factual details about the community submission video other than his conclusion about what the video shows.

110.     An affiant's conclusory summary of information not included in the affidavit, without the presentment of any underlying facts substantiating the conclusion or any underlying facts concerning the integrity of the informant's information, is not sufficient to establish probable cause. *Illinois v. Gates*, 462 U.S. 213, 288, 103 S. Ct. 2317, 2359, 76 L. Ed. 2d 527 (1983); *State v. Allman*, 369 N.C. 292, 294, 794 S.E.2d 301, 303–04 (2016); *State v. Hyleman,* 324 N.C. 506, 510, 379 S.E.2d 830, 832–33 (1989).

**C. The Search Warrant Was Overbroad In Violation Of The Fourth Amendment's Particularity Requirement.**

111.     Under the particularity requirement of the Fourth Amendment, a warrant may "not be broader than the probable cause on which it is based." *United States v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006).

23

112.    "The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description leaves nothing to the discretion of the officers executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010); *United States v. Chavez*, 423 F. Supp. 3d 194, 206 (W.D.N.C. 2019) (finding search warrant for Facebook account violated the Fourth Amendment's particularity requirement when "[t]he compelled disclosure was not limited to the period of time that the crime allegedly occurred . . . [n]or was the disclosure limited to evidence of the crime").

113.    A search warrant is properly issued if "the facts set out in the supporting affidavit [] show some connection or nexus linking" the items sought and the alleged illegal activity. *State v. Bailey*, 374 N.C. 332, 335, 841 S.E.2d 277, 280 (2020).

114.    Even if the Court accepts as true Defendant Humphrey false and conclusory statements that Ms. Saavedra Forero filmed the alleged vandalism, the search warrant is overly board in that it seeks Ms. Saavedra Forero's internet browser history file and correspondence, including email and messages from various social media platforms, specifically Instagram, WhatsApp, Telegram, Signal, and Facebook, despite there being no allegations in the affidavit that there is probable cause to believe Ms. Saavedra Forero has communications regarding the vandalism incident, has any activity on her social media concerning the vandalism, or has any evidence on her internet browser concerning the vandalism.

115.    The probable cause affidavit contains zero nexus linking correspondence, including e-mail correspondence; social media accounts; or internet browsing history to the graffiti vandalism that Ms. Saavedra Forero is not suspected to have participated in.

116.    The overly broad nature of the search warrant, specifically the inclusion of email and other messaging platform communications, is a grave invasion of Ms. Saavedra Forero's right

24

to privacy and creates a substantial risk that attorney-client privileged communications between Ms. Saavedra Forero and her counsel are currently in possession of UNC PD.

117.    Furthermore, a search warrant must be reasonable, and it is an unreasonable and a major intrusion upon Ms. Saavedra Forero's privacy interests to seize Ms. Saavedra Forero's cell phone to investigate a minor crime for which she is not suspected to have participated.

118.    Because there is no nexus between facts stated in the affidavit and Ms. Saavedra Forero's internet browser file, social media accounts, and electronic correspondence, seizure of this property violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

119.    No reasonable officer, having presented no facts related to Plaintiff's internet browser history, social media accounts, and electronic correspondence in their affidavit, would have believed that probable cause existed to justify the seizure of those items.

120.    Defendants continue to be in possession of highly private and sensitive information retrieved pursuant to the search warrant and Defendants continuous possession of this information represents an ongoing violation of Ms. Saavedra Forero's right to privacy and to be free from having her information unreasonably seized.

121.    This violation can only be cured through prospective injunctive relief from the Court. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 496 (4th Cir. 2005) ("Eleventh Amendment does not bar a suit against a State official for prospective injunctive relief.") (citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

### SECOND CLAIM FOR RELIEF
### EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENEDEMENT
### 42 U.S.C. § 1983
***On Behalf of Plaintiff Against Defendants Humphrey, Dodson, and Davis in their individual capacities***

105.    All preceding paragraphs are incorporated as if fully set out herein.

25

106.    "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation and citation omitted).

107.    Whether the force applied was unreasonable depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted).

108.    Defendants violated Ms. Saavedra Forero's right to be free from excessive force when they, three grown men, tackled her and knocked her out of her wheelchair while serving a warrant for evidence of a crime she did not commit and on the basis of behavior that was not a crime, despite them being aware Ms. Saavedra Forero intended to provide them with her cellular device.

109.    At the time of the incident, officers knew that Ms. Saavedra Forero was a wheelchair user, and therefore, physically disabled.

110.    Officers engaged in excessive force because they alleged Ms. Saavedra Forero was engaging in the destruction of evidence by turning off her phone, a claim that is objectively unreasonable and false.

111.    At the time officers utilized excessive force, Ms. Saavedra Forero was not committing any crime, was not a threat to the safety of the three grown men that had weapons as well as a significant height and weight advantages, and not actively resisting or attempting to evade arrest or flee.

112.    Therefore, utilizing the *Graham* factors, Defendants engaged in excessive force

26

when they tackled Ms. Saavedra Forero throwing her from her wheelchair.

113.     Under *Graham* and a plethora of other precedent from U.S. Supreme Court and Fourth Circuit cases, it is clearly established that the force utilized by Defendants Humphrey, Dodson, and Davis was excessive and objectively unreasonable.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12132**
***On Behalf of Plaintiff Against Defendant UNC CH and Defendants Humphrey, Dodson, and Davis in their official capacities***

114.     All preceding paragraphs are incorporated as if fully set out herein.

115.     "Title II of the ADA prohibits discrimination against individuals on the basis of disability by public entities, including when an individual is 'excluded from the participation in or ... denied the benefits of the services, programs, or activities of the public entity....'" 42 U.S.C. § 12132; *A.G. v. Fattaleh*, 614 F. Supp. 3d 204, 240 (W.D.N.C. 2022).

116.     To establish a claim under the ADA, a plaintiff must allege that: "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." *A.G. v. Fattaleh*, 614 F. Supp. 3d 204, 240–41 (W.D.N.C. 2022) (citing *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502 n.4, 503 (4th Cir. 2016) (combining analysis of ADA and Rehabilitation Act claims "and principally analyz[ing] the ADA claim")).

117.     The Fourth Circuit further construes "Title II of the ADA to allow a plaintiff to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A.G. v. Fattaleh*, 614 F. Supp. 3d 204, 240–41 (W.D.N.C. 2022) (citing *A Helping Hand, LLC v. Balt. County*, 515 F.3d

27

356, 362 (4th Cir. 2008)).

118.    The ADA provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202.

119.    This provision clearly and unambiguously expresses congressional intent to abrogate the States' Eleventh Amendment immunity with respect to claims brought under the ADA. *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 484 (4th Cir. 2005) ("Because Congress clearly expressed its intention to abrogate the States' Eleventh Amendment immunity, and did so pursuant to a valid exercise of constitutional authority, the Eleventh Amendment poses no bar to [Plaintiff]'s claims under Title II of the ADA.") (citing *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, 1985, 158 L.Ed.2d 820 (2004); *Board of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363–64, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)).

## A.  Defendants Humphrey, Dodson, and Davis Seized Plaintiff's Cellphone in a Manner That Did Not Reasonably Accommodate Plaintiff's Disability

120.    Ms. Saavedra Forero has a physical impairment that implicates her ability to walk and that impairment is substantial and requires that she use a wheelchair.

121.    Ms. Saavedra Forero is disabled as is defined under the Americans with Disabilities Act, and she is qualified and entitled to receive the benefits of the non-discriminatory administration of her collegiate education, including participating in First Amendment protected activity on her public university's campus.

122.    Title II of the ADA requires the City "make reasonable modifications in policies, practices, or procedures ... to avoid discrimination on the basis of disability...." 28 C.F.R. § 35.130(b)(7); *A.G. v. Fattaleh*, 614 F. Supp. 3d 204, 242 (W.D.N.C. 2022).

123.    The Fourth Circuit has held that searches and seizures by local police departments

28

are governed by the ADA. *See, e.g., Waller v. City of Danville*, 556 F.3d 171, 174 (4th Cir. 2009) ("In the context of arrests, courts have recognized two types of Title II claims: ... (2) reasonable accommodation, where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees").

124.     Individuals suffer disability-based discrimination when police, acting with knowledge of the person's disability, effectuate their seizure in a way that does not reasonably accommodate their disability. See, e.g., *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) ("We agree with the majority of circuits to have addressed the question that Title II applies to arrests."), rev'd on other grounds, cert. dismissed in part sub nom. City & Cnty. of San Francisco, Calif. v. Sheehan, 575 U.S. 600 (2015); See, e.g., Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 718 (E.D. Pa. 2007) (stating that "serving an involuntary mental-health commitment order in a safe manner is a service or activity covered by Title II"); Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) (stating that transportation of an arrestee is a service of the police within the meaning of the ADA); cf. Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty., 673 F.3d 333, 338–39 (4th Cir. 2012) (holding "ADA applies to police interrogations").

125.     Defendants were aware Ms. Saavedra Forero had a disability and they subjected her to disability discrimination by not reasonably accommodating her disability when seizing her cellular device.

126.     As a result of Defendants' actions, Ms. Saavedra Forero was subjected to disability-based discrimination in the provision of police services and in violation of Title II of the Americans with Disabilities Act, and she suffered damages in the form of significant bruising to her body, as well as mental anguish.

29

**B. Defendants Intentionally Discriminated Against Plaintiff When They Sought A Search Warrant of Plaintiff's Cellphone Because of Her Disability**

125. "Thus, any 'program or activity'—including all the operations of a university or other postsecondary institution, *id.* § 794(b)(2)(A)—that receives federal funding must not discriminate on the basis of disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 491 (4th Cir. 2005). "States are not immune from federal suits to enforce this provision, 42 U.S.C. § 2000d–7." *Id.*

126. Participating in student organizations, including programs and activities organized by student organizations, freely traversing the campus, and participating in First Amendment protected activities are all programs or activities of a collegiate education at UNC CH.

127. In addition to failing to reasonably accommodate Ms. Saavedra Forero in the provision of police services, Defendants also intentionally discriminated against Ms. Saavedra Forero when they impeded her ability to participate in university programs and activities by targeting her because of her disability.

128. Among dozens, if not hundreds, of individuals participating in an activity organized by a registered student organization that received university funding, Ms. Saavedra Forero was targeted for a search warrant, not because she participated or aided criminal activity, but because her disability allowed law enforcement to identify her when they could not identify anyone else.

129. As previously stated, Defendant Humphrey knew his statement that a community video submission showed Ms. Saavedra Forero filming the graffiti vandalism was false when he said it.

130. This false statement was used as pretext to deliberately discriminate against Ms. Saavedra Forero because her status as a wheelchair user allowed police to determine her identity.

30

131.    This deliberate discrimination impeded, and continues to impede, Ms. Saavedra Forero's ability to participate in activities and programs organized by university student organizations.

132.    UNC CH is vicariously liable for its officers' violations of ADA because the violations occurred while the officers were acting within the scope of their employment and UNC CH has control over officers employed with the university.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
### 29 U.S.C. § 794(a)
*On Behalf of Plaintiff Against Defendant UNC CH and Defendants Humphrey, Dodson, and Davis in their official capacities*

133.     All preceding paragraphs are incorporated as if fully set out herein.

134.    A State may waive its Eleventh Amendment immunity and consent to suit in federal court. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

135.    A State institution implicitly waives its Eleventh Amendment immunity "by voluntarily participating in federal spending programs when Congress expresses a clear intent to condition participation in the programs ... on a State's consent to waive its constitutional immunity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 491 (4th Cir. 2005) (quoting *Litman v. George Mason Univ.,* 186 F.3d 544, 550 (4th Cir.1999)).

136.    Additionally, 42 U.S.C. § 2000d–7(a)(1) provides that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights

31

Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."

137.   UNC CH accepts federal funds and participates in federal spending programs and therefore, has waived its constitutional immunity to claims under § 504 of the Rehabilitation Act.

138.   Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

139.   Like a claim under the ADA, a plaintiff seeking recovery for violation of § 504 of the Rehabilitation Act must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability. *Baird v. Rose,* 192 F.3d 462, 467–70 (4th Cir.1999); *Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1264–65 & n. 9 (4th Cir.1995).

140.   Ms. Saavedra Forero has a disability as defined under the Act.

141.   As a student at UNC CH, Ms. Saavedra Forero was qualified to receive the benefits of her public education at UNC CH, including the ability to participate in activities planned by student organizations.

142.   Ms. Saavedra Forero is also entitled to receive the benefits of policing services.

143.   Ms. Saavedra Forero was discriminated against when Defendant Officers knocked her from her wheelchair while executing a search warrant, despite the fact that she was not committing any crime and they were aware of her disability.

32

144.     Ms. Saavedra Forero was discriminated against because she was denied the ability to participate in a student organization's activity, specifically a free speech event on campus, without her disability making her a target for law enforcement.

145.     Upon information and belief, but for Ms. Saavedra Forero being a wheelchair user, she would not have been targeted by Defendants for execution of a search warrant.

146.     UNC CH is vicariously liable for its officers' violations of § 504 of the Rehabilitation Act because the violations occurred while the officers were acting within the scope of their employment and UNC CH has control over officers employed with the university.

147.     Because she continues to be enrolled at UNC CH and is entitled to participate in student activities, she continues to be at risk for discriminatory targeting by Defendants.

## FIFTH CLAIM FOR RELIEF
## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT
## 42 U.S.C. § 1983
### *On Behalf of Plaintiff Against Defendant UNC CH and Defendants Humphrey, Dodson, and Davis in both their official and individual capacities*

148.     All preceding paragraphs are incorporated as if fully set out herein.

149.     "The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir.2000).

150.     A plaintiff seeking to recover for First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct. *Id.* at 686.

33

151.    First Amendment retaliation is actionable because "retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Md., Inc. v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir.1993).

152.    "Conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, and a plaintiff need not actually be deprived of her First Amendment rights in order to establish First Amendment retaliation." *Id* at 786 n.6.

153.    "For purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

154.    As stated in Defendant Humphrey's probable cause affidavit, Ms. Saavedra Forero was targeted for a search warrant because she attended a free speech event and recorded while present at this event on located on a public sidewalk.

155.    Both of these activities are First Amendment protected activities.

156.    The Defendants' actions in subjecting Ms. Saavedra Forero to a highly invasive, broad violation of her privacy when she was not accused of participating in the alleged graffiti vandalism and solely because of her presence at the free speech event and her decision to record parts of the demonstration adversely affected her First Amendment rights. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir.2000) (noting that retaliatory disclosure of information may constitute adverse action if it is "sufficiently embarrassing, humiliating, or emotionally distressful" and citing Bloch's "ordinary firmness" standard).

157. Defendants' decision to seek large swaths of Ms. Saavedra Forero's private information and disclose this information to UNC PD was retaliatory and subjected Plaintiff to humiliation and emotional distress.

158. Because Ms. Saavedra Forero fears she will continuously be targeted by Defendants if she attends demonstrations or free speech events on UNC CH's campus, Defendants actions have chilled Ms. Saavedra Forero's First Amendment rights.

159. Additionally, Defendants' actions in executing the search warrant, a warrant obtained because of Plaintiff's participation in First Amendment protected activity, caused Plaintiff to suffer physical injuries, humiliation, and emotional anguish.

**SIXTH CLAIM FOR RELIEF**
**BATTERY**
**North Carolina Common Law**
***On behalf of Against Defendants Humphrey, Dodson, and Davis in their individual capacities***

160. All preceding paragraphs are incorporated as if fully set out herein.

161. The Supreme Court of North Carolina has said that "[t]he interest protected by the action for battery is freedom from intentional and unpermitted contact with one's person[.]" *Dickens v. Puryear*, 276 S.E.2d 325, 330 (N.C. 1981).

162. In *Dickens*, the Court indicated that the N.C. Court of Appeals case *McCracken v. Sloan*, 252 S.E.2d 250 (N.C. App. 1979), properly identified the contours of the battery tort. *Id*.

163. In *McCracken*, the N.C. Court of Appeals wrote:

The interest in freedom from intentional and unpermitted contacts with the plaintiff's person is protected by the action for battery. It is not necessary that the contact be brought about by a direct application of force. It is enough that the defendant set a force in motion which ultimately produces the result. The gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff.

252 S.E.2d at 252.

164.    Defendants Humphrey, Dodson, and Davis made intentional and unpermitted physical contact with Ms. Saavedra Forero.

165.    Additionally, Defendant Humphrey set in motion a series of events that resulted in other police officers making intentional and unpermitted physical contact with Plaintiff's person, which caused Plaintiff cognizable injuries.

**SEVENTH CLAIM FOR RELIEF**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**North Carolina Common Law**
***On behalf of Plaintiff Against Defendants Humphrey, Dodson, and Davis in their individual capacities***

166.    All preceding paragraphs are incorporated as if fully set out herein.

167.    Under North Carolina law, a plaintiff may state a claim for negligent infliction of emotional distress by alleging that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990).

168.    In the instant case: (1) Defendants Humphrey, Dodson, and Davis were negligent in their duties as law enforcement officers. Those duties obligated them to act in accordance with the U.S. Constitution, which precluded them from seizing Ms. Saavedra Forero's cellphone based on an insufficient warrant application that lacked probable cause and prohibited them from engaging in excessive force. (2) It is and was reasonably foreseeable that seizing Ms. Saavedra Forero's cellphone and causing her physical injury through the use of excessive force, particularly in light of Ms. Saavera Forero's disability, in violation of her Fourth Amendment rights would

36

cause severe emotional distress. (3) In this case, Defendants' conduct did, in fact, cause Plaintiff severe emotional distress and mental anguish.

169. As a result of Defendants Humphrey, Dodson, and Davis's negligence, Ms. Saavedra Forero suffered physical injuries in the form of bruising and severe emotional distress in the form of anxiety, fear, and anguish.

170. As a result of Defendants Humphrey, Dodson, and Davis's negligence, Plaintiff's arrest led to, in a manner reasonably foreseeable, disclosure of personal information that resulted in Plaintiff being harassed and doxed.

171. Defendants' conduct did cause and continues to cause Plaintiff severe emotional distress and mental anguish.

**EIGHTH CLAIM FOR RELIEF**
**CORUM CLAIM**
**N.C. Const. art. I, § 20 and North Carolina Common Law**
*On Behalf of Plaintiff Against All Defendants*

172. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

173. The North Carolina Supreme Court "has recognized a direct action under the State Constitution against state officials for violation of rights guaranteed by the Declaration of Rights." *Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992).

174. When there is no remedy available, North Carolina common law "guarantees plaintiff a direct action under the State Constitution for alleged violations of his constitutional [] rights." *Id.*

175. "[W]hen public officials invade or threaten to invade the personal or property rights of a citizen in disregard of law, they are not relieved from responsibility by the doctrine of

sovereign immunity even though they act or assume to act under the authority and pursuant to the directions of the State." *Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 786, 413 S.E.2d 276, 292 (1992).

176. Article I, Section 20 of the North Carolina Constitution prohibits unreasonable searches and excessive force.

177. North Carolina appellate courts have construed search and seizure provisions in the North Carolina and federal constitutions as protecting the same rights against unreasonable searches and seizures. *State v. Otto*, 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012).

178. However, North Carolina courts have also held that the rights secured under the North Carolina Constitution are broader than those secured under the federal constitution. See, e.g., *Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 475 (1999) (stating that "the United States Constitution provides a constitutional floor of fundamental rights guaranteed all citizens of the United States, while the state constitutions frequently give citizens of individual states basic rights in addition to those guaranteed by the United States Constitution"); *Jones v. Graham Cnty. Bd. of Educ.*, 197 N.C. App. 279, 289–93, (2009) (noting that "[i]f we determine that the policy does not violate the Fourth Amendment, we may then proceed to determine whether Article I, Section 20 provides basic rights in addition to those guaranteed by the [Fourth Amendment]" (quotation omitted)).

179. Defendants violated Plaintiff's right to be free from unreasonable search and seizure under the N.C. Constitution when they seized her cellphone without probable cause and when they engaged in excessive force by knocking her from her wheelchair.

180. Should the court find that Plaintiff's U.S. constitutional claims are barred by sovereign immunity, Plaintiff will not have an adequate remedy to recover for the violation of her

constitutional rights. *See Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761 (1992).

181.   Additionally, Plaintiff has no adequate remedy to recover for the violation of her constitutional rights under state law.

182.   "[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Id.* at 782 ("Therefore, the common law, which provides a remedy for every wrong, will furnish the appropriate action for the adequate redress of a violation of that right.")

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

(a)   Enter a permanent injunction enjoining all Defendants from continuing to review and possess contents of Ms. Saavedra Forero's cellular phone pursuant to the search warrant and ordering Defendants to destroy any information that is currently in their possession that was retrieved pursuant to the search warrant;

(b)   Enter a permanent injunction enjoining all Defendants from utilizing Ms. Saavedra Forero's participation in protests or demonstrations or her status as a wheelchair user as a basis for subjecting her to highly invasive searches and seizures when she has not been accused of committing a crime;

(c)   Award damages against Defendants for retaliating against Plaintiff in violation of her First Amendment rights;

(d)   Award damages against Defendants Humphrey, Dodson, and Davis, in their individual capacities, for violation of Ms. Saavedra Forero's Fourth

39

Amendment right to be free from unreasonable search and seizure and excessive force;

(e)  Award damages against Defendants for violating Ms. Saavedra Forero's right to be free from unreasonable searches and seizures under the N.C. Constitution;

(f)  Award damages against Defendants Humphrey, Dodson, and Davis for violating North Carolina law;

(g)  Award damages against Defendants for violating Ms. Saavedra Forero's rights under the Americans with Disabilities Act and § 504 of the Rehabilitation Act;

(h)  Award Plaintiff their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920 and as otherwise permitted by law; and

(i)  Order such other relief as this Court deems just and equitable.

RESPECTFULLY submitted this 2nd day of May, 2025.

*/s/ Jaelyn Miller*
Jaelyn Miller
NC Bar No. 56804
Elizabeth Simpson
NC Bar No. 41596
Emancipate NC
PO Box 309
Durham, NC 27702
jaelyn@emancipatenc.org
elizabeth@emancipatenc.org

*Counsel for Plaintiff*

40

## CERTIFICATE OF SERVICE

I certify that on May 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and e-mailed true copies of this proposed second amended complaint to the following:

Elizabeth B. Jenkins
Special Deputy Attorney General
Education Section
Phone: 919-716-6918
Email: ejenkins@ncdoj.gov
114 W. Edenton St., Raleigh, NC 27603

s/Jaelyn Miller
*Counsel for Plaintiff*